Good morning, Your Honors. My name is Stephen Babcock. I'm an assistant federal public defender in the District of Montana. I represent the appellant in this matter, Michael Bryant, Jr. In 1989, this Court said that even in a tribal proceeding, when the Indian Civil Rights Act and tribal law is complied with, if that violation, if that conviction is a violation of the federal Constitution, the Sixth Amendment, it cannot be used to support a subsequent federal prosecution. That's United States v. And. And just crisply, what's the rationale for that? The rationale for that is because people in the United States are afforded rights underneath the bill of rights. And if we're going to use a prior conviction that is essentially constitutionally infirm, and we're going to then use that to establish a substantial element in federal court, where obviously where the bill of rights is certainly living and alive today, it should not be able to be used. Well, okay. I mean, that's – I thought you were going to go somewhere else, because the premise of what you just said is it's not accurate for the prior convictions. They weren't constitutionally infirm. The Constitution doesn't even apply in tribal court proceedings, at least not the Sixth Amendment right to counsel. That's right. And we are not here today questioning the conviction in tribal court. We are not at all. But aren't you – so isn't the – doesn't the rationale for you to win, doesn't it have to be that there's something suspect in terms of the reliability of the underlying conviction if counsel wasn't afforded? I mean, that's what I thought you were going to try to – Well, sure. I mean, I think that's blatantly obvious in why the Sixth Amendment is still alive today, because we afford people the right to counsel. And when we're going to use a prior conviction to establish a substantial element in a subsequent federal prosecution and we're basing that upon a particular conviction, then it would not be good. If it was in state, local, or federal court, then we should not be able to use that as an element of an offense, as the government would like us to do in this habitual domestic offender statute. Now, the government has said that Ant, the foundation of Ant, has been rocked. I would disagree with that. And they point to Balladastar being overruled by Nichols. I think this court, when examining this issue, and Judge Piaz issued the decision in October of 2013, in first, stated specifically in a footnote that the vitality of Ant is not in question. Ant is alive, and Ant rules the day here today. And the government would like us to concentrate on Nichols, but Nichols has extreme distinguishing factors from this current situation. First of all, in Nichols, the individual was not incarcerated. Mr. Bryant was incarcerated on those tribal convictions. They would still be constitutionally infirm underneath Nichols. Can I ask you about that? So there's a whole bunch of them. And there are a couple, you know, and I'm just looking at the PSR, in which it doesn't look like he was incarcerated. And I want to ask the government why they've given up on that. But do you know something that isn't apparent from the PSR? Not at all. So how do you, why are you saying that he was incarcerated? Because There's two domestic abuse convictions that it doesn't look like he was incarcerated at all. The government has conceded that point, and they've sent a letter to Session. And we'll find out why. And I will say why, because when an individual is, when the police investigate the Bureau of Indian Affairs, and they come to a house, they arrest someone. They arrest someone, and they are incarcerated. They're not given a citation to appear in court on a violation of domestic abuse. That individual could have been in jail for one day, two days, they're still incarcerated. And that's different than what happened in Nichols. Additionally, in this case, they are using these to try to prove a substantial element of the case. In Nichols, they went at great lengths and talked about the differences between sentencing and using prior convictions to establish a substantial element. What we have is also, and I think it's an analogous to this case, and that is we don't even use tribal convictions to assign criminal history points. So you can have these convictions, and they were not used to calculate the criminal history score. However, they are used as predicate offenses to establish a substantial element of the offense. I just say that doesn't make any sense. If you take also a look at his prior convictions, I don't buy the argument that the fact is that we're only using those prior convictions to establish that there was prior convictions. Well, if you take a look at the actual elements of the offense, it says that the defendant has at least two separate prior convictions in tribal court. That would be, if subject to federal jurisdiction, an assault against an intimate partner. That's an essential element of the offense. That is something the government had to prove. And when it states here if subject to federal jurisdiction, there can be absolutely no argument at all that if these cases were subject to federal jurisdiction, they would be 100 percent constitutionally infirm, 100 percent in violation of the Sixth Amendment. I mean, you keep saying that, but again, that would only be true if he were incarcerated. And I don't think your analysis that if you get arrested, that that counts. I think it's that you have to have been sentenced post-conviction to incarceration. Am I wrong on that? I would say not. I would say that it What case says that if you just get arrested and are held for a day before you get released on the charge, and then when you get convicted, you're given probation, what case says that's a violation of the Sixth Amendment? I have to say I don't know of any case, Your Honor. I think the rule is that as long as you're not sentenced to incarceration post-conviction, it's okay not to have that counsel under the Sixth Amendment. I don't think it has anything to do with arrest. So again, I mean, I need to ask the government this, because they're the one who conceded it. Yeah, they conceded on this issue. But the government would like us to focus on two out-of-circuit as precedent, and the Eighth Circuit in Kavanaugh overruled the district court, which had held that the motion to dismiss should be granted, to dismiss the indictment, and they more or less held that the prior convictions were in compliance with the Indian Civil Rights Act, and that there's no problem to use them in the prior subsequent federal prosecution. I would say that in reading exactly what Ant says, and once again reaffirmed with the vitality in first, that that goes directly against case law that is precedent here today. And what I find interesting about the Eighth Circuit decision is that when they get down with their entire analysis, they state that reasonable decision holders could find a different decision. That's not real strong language after you go through an exhaustive review of the Sixth Amendment, and it's my belief that the Eighth Circuit, if they would have had Ant, would have had a more reasonable decision and affirmed the district court. The Tenth Circuit case, which is Kavanaugh, which more or less concentrated on the Fifth Amendment analysis, but they did talk a little bit about Ant, that's for sure. But what I find interesting about that case is that they say that the defendant in that case was not constrained by the Bill of Rights. As I walked in the courtroom here today, standing outside is the Bill of Rights. I don't think that we ever come to the conclusion as American citizens that those words mean constraint for citizens. So I would certainly disagree with that. And also, the Court in Kavanaugh, when analyzing the Sixth Amendment issue, specifically stated that we are at odds with the Ninth Circuit on this issue. So when we take a look at this, Ant rules the day. Ant still holds that you cannot use a conviction, even when in compliance with the Indian Civil Rights Act and does not have the right to court-appointed counsel. That is undisputed. We also have cited a Northern Cheyenne tribal law, which does not afford individual those rights. In taking a look at that, we get strictly to what Ant says, and Ant says, that's fine. We're not overruling those convictions in tribal court, but we're not going to be able to use them then as proving a substantial element or to support a subsequent federal prosecution in federal court. There's no question that these convictions would not be good in federal court. With that, Your Honor, I would like to reserve the rest for rebuttal. Thank you. Roberts. Can you start with the concession? Yes, Your Honor. Leif Johnson for the United States, and may it please the Court. Judge Watford, you know, part of the process of dealing with a couple of these related cases that we're dealing with. Can you keep your voice up, please? I'm sorry. Part of the process of dealing with a couple of these related cases concerning 117 convictions, we went out and talked to the tribal prosecutors and tried to sort of get some background on what was going on with these records that we're relying on in these cases. And we learned through that process that, as Mr. Babcock expressed and as he expressed to the district court, as I realized later, in every one of these cases, these guys are being arrested. They're having to actually serve some time in jail. And then when they're adjudicated, either they're getting time served or they're getting additional time on top of that. And so what we have, I think, to be fair, is sort of an uncertain record that we're relying on. And we felt, given that uncertainty, as we did in these related cases, that we just didn't think that we could stand on the proposition that the record here established a lack of certainty. I think that's the admirable thing to do. We, you know, we were looking. All we had was the PSR, and you can't tell. But when I was at the PSR, I was pretty much satisfied that there was only one. And that was the thing. When I first looked at it, I was under the impression that perhaps we could argue time served, you know, what didn't count as a term of incarceration, but that issue has been addressed in the Seventh Circuit. And so I just felt that we needed to clarify the record and really get at the point in here, because we don't think it bears on our position. And I'd like to jump into that. Well, go ahead. Go ahead. No, no, no. No, I was just going to say, you know, I thought for me, I mean, I think the problem is Ant. Yes. You know, and I thought long and hard about Ant when I did the other case first not too long ago. Yes. And it seems to me that Ant is still alive and well. And we agree with that. So you need to show me a way around Ant. I agree with that, Your Honor. And I think we need to start with first principles here that – Well, wait. Just before – I want you to do that, and you have plenty of time. But you were just agreeing that you – I thought I heard you agree with Judge Pius that Ant is still alive and well. Well, if it is, do you concede that you lose, that the government loses? We concede that if you say that Ant stands for everything that it says, that it's not somehow limited by letter of authority or – Right. Yeah. Okay. It's done. And then we have a direct conflict with the Eighth and the Tenth Circuit. Right, right, right. Okay. So our position on Ant, Judge Pius, is starting with first principles. Obviously, Section 117a is a different situation. And it enjoys the presumption of constitutionality. And that's where we start. And so the question becomes, can Ant and Section 117 coexist? And to do so, I think the – what we try to do in our brief and in our argument in the Tenth and Eighth Circuits is to say, look, Ant really stands for an important principle, an important Sixth Amendment principle that's not at issue in Section 117. And that principle is you can't take an uncounseled guilty plea in tribal court and essentially convert it into a felony in Federal court, right? Because it's not because there's a Sixth Amendment violation in the tribal court, it's because in the Federal court, the defendant really has no ability to defend with counsel that conduct which is being used to convict, right? And 117, obviously, it's a different situation. I'm sorry. Yes. You just said something that made me pull up the statute. You said that the question is whether Ant and 117 can coexist. I just don't – why would they not be able to coexist? Because – because Ant in its holdings says that all prior convictions to be used in a Federal court proceeding need to be tested as to whether or not they would have been constitutional if they had been brought in Federal or State court. Okay. So just – I'm looking at the statute. So what in here is inconsistent with that rule? It certainly says that tribal convictions can count, but subject to Ant. It says that all tribal convictions can count, and it doesn't limit that in any way. In other words, it doesn't limit the use of tribal convictions for those that were brought or achieved in accordance with statute – with constitutional standards in Federal and State court. Well, if it doesn't say – if what you're saying is that it doesn't say the conviction would have to be, you know, comply with constitutional limitations if it had occurred in State or Federal court, that's true. But it certainly doesn't say that the State court conviction, for example, that it has to be constitutional. It's just kind of a background assumption, right? It is. It is. And this Court discussed that in the first decision, which is, you know, Congress understood when it was enacting the 922g9 statute and also this one, that essentially they're drawing in uncounseled convictions, because the Sixth Amendment doesn't apply in tribal courts. So when Congress generally draws in tribal court convictions, it's drawing in uncounseled convictions. And so Congress – But we were, you know, at first, though, there was a way around Ant. I think there is a way around Ant. At first, when we did the – when we did that. Oh, yes. Right. And we think the same principles for getting around Ant should apply to this statute. And the reason we say that, obviously, is we think Ant's holding is too broad. The whole notion – You may think it's too broad, but we're – as a three-judge panel, we have to –  we have to live with Ant. And we think it has been trimmed. We start with Ant as the law of the circuit. Yes. And Ant speaks of tribal convictions as constitutionally infirm. We don't think that's correct. And we think you actually recognize that in first when you sort of summarize the holding of Ant, saying that prior convictions, you know, can't be used unless they – if they violated Federal constitutional standards, right? So we think that given Nichols, and if you read Nichols to hold that prior convictions can be used to the extent they don't violate the Constitution as the courts in the Eighth and the Tenth Circuit have held, then that leaves the door open for Congress to designate convictions that are outside of the constitutional arena that may be considered for limited purposes. And on – and so you would start in limiting Ant by looking to Nichols and saying, look, if we read Nichols to stand for that proposition, then Ant really is limited more to the scenario that it actually dealt with, which was converting a misdemeanor into a felony. And so one of the things we're – I'm sorry. Ant was dealing with – I'm confused as to – I thought Ant was – they wanted to use the guilty plea in tribal court as substantive proof of guilt of the exact same offense in Federal court. And actually, it was a more serious offense because the victim had then died, and so it was a manslaughter. It was a manslaughter charge, right. So essentially, you're using facts that were, you know, established through a non-counsel plea in another proceeding to prove the same conduct. And obviously, the defendant doesn't have the counsel to defend against that conduct in the Federal court proceeding. That's not the case with Section 117. And the reason that we draw this line through the cases to Nichols and say that Ant is somehow limited by Nichols is because in – the 117 is essentially the same type of statute – it's a direct analogy to what was going on in the Baltazar case. And there, there was an Illinois statute, the second misdemeanor was converted into a felony, and, you know, Nichols expressly overruled that. And so what it did was it opened the door that there are going to be circumstances where other convictions outside of the constitutional realm may be used. If we don't agree with you that Nichols has somehow so undermined Ant's foundation that Ant is no longer – if we don't agree with you on Nichols, then do you – what do you got left? Is that – that's basically it. That's basically it. I mean, we have to get around Ant in this case. And as – No, I – no, you conceded that at the outset. I'm talking about if we don't buy your Nichols route to get around Ant, then do you have any – do you have a backup besides that? Well, we think Ant still stands for a valuable Sixth Amendment principle, but that it needs to be narrowed in light of Nichols, as the courts did in the Eighth and Tenth Circuit. Just – I'm trying to be fair. If – I'm just – I want to be clear. I don't buy your reading of Nichols, okay? I'm just – it doesn't relate to the situation we're dealing with. So if I don't buy that, do you have something else, or do I just say, okay, well, you lose? Well, we do. I mean, the whole – okay. So Nichols is one issue, and I think you also need to read it in line with Lewis and the authorities that are discussed at Lewis. And there, you know, clearly, you know, the Court sort of held open the possibility that uncounseled convictions can be used, and even uncounseled convictions that violate the Constitution, right, can be used for another purpose. And I understand it's a different purpose and we have the civil disability issue. However, there is language in Lewis that seems to open the door for that interpretation, and when Lewis is discussing the Burgett case, if you go back – way back into the Burgett line of decisions, you know, the Supreme Court was basically saying, look, you can't use a prior felony that was achieved under unconstitutional circumstances to, you know, later enhance punishment or establish an offense. And so that became sort of a hard and fast rule all the way through until Nichols. And in Lewis, the Court basically said, but there's an exception where Congress might have a good purpose or a reason for doing that, all right? And that area is where the prior convictions are really used for the sake of the conviction alone. That is, we're not trying to sort of use them to prove the reliability of the conduct that they established, but we're using them for a much more limited purpose, a limited purpose that is to show, in this case, that the defendant, not that he did those prior acts, but that he's actually more dangerous than his present offense would indicate. Yeah, I hear you. But just the reason that rationale doesn't seem to apply to this context is that it does matter if the defendant really did the underlying conduct, right? No, I – well, it matters in terms of proving an element of defense. That's true. True. It's essential here. It is essential here. But, I mean, here again, I mean, that's why in Nichols the Court sort of equated recidivist statutes with the mandatory guidelines. There is a real parallel between the two. I mean, the use of prior convictions here is not to establish that an assault occurred here. It essentially basically tells the Court, this person is more dangerous than his underlying offense in this case would indicate, right? And so in that sense, the recidivist statute that was at issue in Illinois and the one that issued here is really very analogous to what was going on with the mandatory guidelines in Nichols. So do we have other ways to sort of narrow Ant's holding? I think what the best way to look at this is what the Court did in the Tenth Circuit and in the Eighth Circuit. That is, the Sixth Amendment doesn't apply in tribal court. And that rule in itself, when you consider the lines of the Supreme Court authority, it does appear that the Supreme Court has left open the possibility. And Kavanaugh discusses this. He says reasonable minds can differ on this. It's a close question. But when you read Kavanaugh and the various lines of Supreme Court authority, it's our position that that has left open the possibility that Congress, in limited circumstances, can use prior convictions which were obtained under the Indian Civil Rights Act, which are valid and which are reliable, at least enough to show a defendant's habitual nature, can be used for the limited purpose of this type of recidivist statute. And the reason for that is, you know, sort of as the Court discussed in Lewis, there are important sort of reasons. And Congress obviously has a serious problem with domestic abuse on the reservation. But, and I readily acknowledge in this case, you know, getting around Ant is our first step here. And in order to do that, you need to limit Ant. You don't need to throw it out. You need to limit it. You need to limit it based upon these various lines of constitutional authority that the Court described, I think, very well in the Kavanaugh decision, and which we think leave open the possibility that Congress wasn't trampling on Sixth Amendment rights in using this sort of recidivist statute. I hope that. Listen, I think your argument is perfectly reasonable. I'm not faulting you. I was a little harsh maybe in saying I just don't buy your reading of Nichols. I think your argument here is perfectly reasonable. I hope, if it turns out that the government loses the case, I hope you guys will take it to the Supreme Court. It seems to me that's where the ultimate clarification comes from. I agree. I mean, ultimately, I think that's where this is going. Obviously, we would like to see this Court hold in accord with the Eighth and the Tenth Circuits. But obviously, that's whether you can get around Ant. Thank you so much. Okay. Thank you. You have a few minutes for rebuttal. Thank you very much. You know, I guess I would once again state that Ant can't be used in a limited purpose in this particular scenario unless it's overruled. Does Lewis provide a way around Ant? That's the civil disability that the Court was very clear as placing in the footnote in first. This is not a civil disability here. This does not deal with a 922G conviction. It states that the resulting conviction may not be used to support a subsequent Federal prosecution. If you're using that conviction, which is in violation of the Sixth Amendment, might comply with the Indian Civil Rights Act and tribal law, if you're using that to establish a substantial element of the offense, it surely is being used to support a subsequent Federal prosecution. And if we take a look at the purpose of Congress, I'm not here to dispute that. I mean, what was done with this legislation 100 percent has merit. Obviously, there is a lot of violence that needs to be dealt with on the reservation. However, we can't do that in a way that violates the Sixth Amendment of the Constitution, and we have the case here in this circuit that prevents them from doing so. If we take a look at the government's other argument as far as, well, in Ant it had to deal with the same offense. Excuse me. Why do we have so much violence on the reservations? You know? Well, Your Honor, I think as an individual that grew up in Montana next to a reservation, I would say that there's a massive controlled substance problem. And I think that that breeds violence. However, when we take a look at it in this scenario, what we have Is that problem being worked on by federal authorities? I think the federal government does the best that they can. I think there's things that tribal governments and federal governments need to do, but that's certainly a question that is way above my pay grade. You're a federal defender. You're in a high pay grade. That's not what my wife thinks, Your Honor. My wife will agree with you. Go ahead. Yes. But I would say that in reading what Ant holds for, that the distinction that this doesn't have to deal with the same offense, that's not what Ant holds. And I submitted a 28-J letter to this court, two Article III judges in the District of Montana, one in Great Falls, Judge Morris, and Judge Waters in the Billings Division. They didn't buy that argument either. And that's why. Yeah. And those were helpful decisions. I'm glad that you submitted them. But let me ask you this, just going back to the Lewis rationale that the government has argued as a backup. So you said, no, no, no, that's different, civil disability. So just articulate the reason why the civil disability rationale in Lewis What underlies that? Well, in Lewis, I think that the main question was, of course, with the 922-G. And obviously, it's a person's civil right is to possess a firearm. And if you do certain things in this country, you can't possess a firearm. And by saying it's a civil disability, I think they go exactly to that. In this particular case, I thought, is the notion that, look, in that context uniquely, perhaps, we don't need to be concerned about the reliability of the underlying conviction. Because basically, as long as you know that you've been convicted, whether it was right or wrong, you have no business possessing firearms. Is that sort of the notion? I think it's sort of the notion. Why wouldn't that rationale apply here, whether you were rightly or wrongly convicted of a prior domestic violence matter? It doesn't matter. You're now on notice. Right. You better not do this again. And if you do, we, the federal government, are going to subject you to punishment. And I think if we go down that road, then there would be an effective overruling event. And I also think that the court noted that distinction in the first opinion. Noted, I'm sorry. They noted the difference between a 922-G conviction dealing with a civil disability, which is definitely something that can be distinguished from the 922-G case. That's something that the government and we have both stated in the supplemental briefing that was done on this case. Right. Thank you very much, Your Honor. Thank you very much. Very interesting case in the matters submitted. That completes our session for today.
judges: PREGERSON, PAEZ, WATFORD